**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

PAUL ARTHUR LOPEZ,

      Plaintiff,

      v.                                     No. CV 13-743 JH/CG

JAMES FRAWNER and MICHAEL
GONZALEZ, in their official and individual
capacities,

      Defendants.

## <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** is before the Court upon *Defendants'* Martinez *Report* filed September 30, 2014, (Doc. 45); *Defendants' Motion for Summary Judgment and Supporting Memorandum* ("Motion"), filed September 30, 2014, (Doc. 48); *Plaintiff's Response to* Martinez *Report and Opposition to Defendants['] Proposed Summary Judgment* ("Response"), filed October 27, 2014, (Doc. 50); and *Defendants' Reply Memorandum in Support of Their* Martinez *Report [Doc. 45] and Motion for Summary Judgment [Doc. 48]* filed November 7, 2014, (Doc. 52) and the *Affidavit of Plaintiff, Paul Lopez, in Support of U.S.C. Section 1983 Civil Rights Complaint* filed January 2, 2015, (Doc. 54) (together the "Reply").

Also before the Court is Plaintiff's *Motion to Expand the Record*, filed on September 29, 2014, (Doc. 44), and *Defendants' Response in Opposition to Plaintiff's Motion to Expand the Record [Doc. 44]*, filed on October 3, 2014. (Doc. 49).

This matter was referred to this Court to make proposed findings of fact and recommend a disposition by United States District Court Judge Judith C. Herrera. (Doc. 4). The Court finds that there is no genuine dispute of any material fact as to any of

Plaintiff's claims, and **RECOMMENDS** that the Motion for Summary Judgment be **GRANTED**, and this matter be **DISMISSED WITH PREJUDICE**.

## I.    Background

Plaintiff is an inmate who was incarcerated at Otero County Prison Facility ("OCPF") in Chaparral, New Mexico from March 20, 2013 through May 15, 2014. (Doc. 1; Doc. 45 at Ex. 1 ¶ 5). Plaintiff filed an original and an amended pleading pursuant to 42 U.S.C. § 1983, which the Court construes together as the "Complaint."[1] (Docs. 1, 6-1). Plaintiff alleges that while housed at OCPF, his constitutional rights under the First, Eighth, and Fourteenth Amendments were violated by James Frawner and Michael Gonzalez, who are the Warden and a Gang Intelligence Officer at OCPF, respectively.[2] (Doc. 45 at Ex. 1 ¶ 2; *Id.* at Ex. 2 ¶ 2).

Plaintiff contends that Defendants failed to protect him from other inmates because he was not placed in a protective custody unit while he was at OCPF. Plaintiff claims that he complained several times to Defendants that his safety was at risk in general population, and requested voluntary placement in protective custody. Plaintiff argues that Defendants were deliberately indifferent to his safety by not permanently placing him in protective custody, in violation of his Eighth Amendment, Due Process,

---

[1] The Court must construe the filings of a pro se litigant liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court cannot go so far as to serve as the pro se litigant's advocate. *Id.* Plaintiff must follow the same procedural rules that govern other litigants. *Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir. 1994).

[2] Jerry Roark and Joe Booker were also named as defendants in this matter, but were dismissed by Judge Herrera. (Doc. 17). In his Response, Plaintiff contends that the instant Motion for Summary Judgment is moot because his claims against Defendants Frawner and Gonzales survived the Court's initial review pursuant to 28 U.S.C. § 1915(e)(2) and Fed.R.Civ.P. 12(b)(6). Plaintiff claims that the Court must accept as fact all of his allegations in the Complaint, divulge all inferences in his favor, and grant him an opportunity to amend his pleading before dismissing his lawsuit. However, Plaintiff incorrectly conflates the standards for dismissal under § 1915(e)(2) and Rule 12(b)(6) with that for a motion brought under Rule 56. The Motion for Summary Judgment is not moot and shall be considered pursuant to the appropriate standard of review. *See supra*, part III.

and Equal Protection rights. Plaintiff also contends that Defendant Gonzalez retaliated against him in violation of the First Amendment for utilizing the inmate grievance process. Defendants answered and subsequently filed a *Martinez* Report pursuant to court order, and also moved for summary judgment on all of Plaintiff's claims.

## II.    Undisputed Facts

The following facts are either uncontroverted, or related in the light most favorable to Plaintiff as the nonmoving party. On or around March 20, 2013, Plaintiff was transferred from Lea County Correctional Facility ("LCCF") to OCPF. (Doc. 6-1 at 4; Doc. 45 at Ex. 1 ¶ 5). At the time he was transferred to OCPF, Plaintiff was placed in the general prison population. (Doc. 45 at Ex. 1 ¶ 10). Plaintiff is a registered sex offender and a known gang member. (Doc. 45 at Ex. 1 ¶¶ 8, 14, 16, 19; *Id.* at Ex. 2 ¶¶ 14, 19). At OCPF, sex offenders are considered general population inmates who may be housed with law-enforcement protective-custody inmates. (Doc. 45 at Ex. 1 ¶ 8).

On April 17, 2013, Plaintiff provided Defendant Gonzalez with a list of nine "enemies" and requested placement in protective custody. (Doc. 1 at 4; *Id.* at Ex. B; Doc. 45 at Ex. 2 ¶ 11). Defendant Gonzalez met with Plaintiff the next day about the request, and Plaintiff was subsequently placed into interim protective custody pending an investigation. (Doc. 1 at 4; *Id.* at Ex. C; Doc. 45 at Ex. 2 ¶ 12).

On April 24, 2013, Plaintiff was released from protective custody. (Doc. 1 at 4). The decision to place Plaintiff back into general population at OCPF was based on a recommendation made by Security Threat Intelligence Unit ("STIU"), a state-run agency responsible for investigating safety requests from gang members like Plaintiff. (Doc. 45 at Ex. 1 ¶¶ 14, 16, 19; *Id.* at Ex. 2 ¶¶ 14, 19).

On May 5, 2013, Plaintiff was involved in a physical altercation with inmate David Sisneros. (Doc. 1 at 4; Doc. 45 at Ex. 1 ¶ 22). OCPF's investigation of the fight found Plaintiff guilty of fighting and deemed him an aggressor.[3] (Doc. 45 at Ex. 1 ¶ 27; Doc. 46-30 at 6–9). Medical records related to injuries sustained from the fight reveal that Plaintiff suffered head and face injuries, and specifically a purple bruise around his right eye. (Doc. 1 at 3 & Ex. E–G; Doc. 45 at Ex. 1 ¶ 24; Doc. 46-38 at 8). OCPF personnel are aware of no other fights involving Plaintiff during his incarceration at OCPF.[4] (Doc. 45 at Ex. 1 ¶ 22).

On May 28, 2013, Plaintiff filed an informal complaint against the administration for not leaving him in protective custody and putting him in danger, which ostensibly led to the May 5 fight. (Doc. 46-37 at 6). Then on June 6, 2013, Plaintiff again requested that he be placed back into protective custody, and grieved OCPF's security and administration for placing him in danger in general population. (Doc. 1 at 4; Doc. 6-1 at 4; Doc. 46-36 at 20).

On July 2, 2013, Plaintiff was required to take a random drug test by Defendant Gonzalez. (Doc. 45 at Ex. 2 ¶ 20; Doc. 46-31 at 4–5). The drug test, which was administered through urinalysis, came back positive for Buprenorphine ("BUP"). (Doc. 45 at Ex. 1 ¶ 33; Id. at Ex. 2 ¶ 22; Doc. 46-31 at 4–5; Doc. 46-32 at 1–2; Doc. 46-33 at 1–2; Doc. 46-39 at 11). An investigation into the drug test was initiated by prison officials, and a hearing officer subsequently reprimanded Plaintiff for drug use. (Doc. 45

---

[3] That prison officials found Plaintiff to be the instigator of the altercation is undisputed. However, Plaintiff claims that he punched Mr. Sisneros first as an act of self-defense and did not start the fight. (Doc. 50 at 18–19). Thus, the parties disagree as to who instigated the fight, but this fact is not material to the Court's analysis.

[4] Plaintiff alleges that he was regularly beaten and harassed by other inmates while housed in general population at OCPF, (Doc. 6-1 at 5), but does not controvert Defendants' statement that OCPF lacked any knowledge of such incidents.

at Ex. 1 ¶¶ 34–37; Id. at Ex. 2 ¶ 22; Doc. 46-31; Doc. 46–33). On July 11, 2013, Plaintiff

filed a disciplinary appeal claiming that the July 2 positive drug test was the result of a

frame-up orchestrated by Defendant Gonzalez in retaliation for filing an inmate

grievance related to his removal from interim protective custody. (Doc. 45 at Ex. 1 ¶ 38;

Doc. 46-30 at 11–16). The hearing officer's decision was appealed and upheld. (Doc. 45

at Ex. 1 ¶¶ 39–41; Doc. 46-30 at 10).

### III.    Standard of Review

The court shall grant summary judgment only if "the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." FED.R.CIV.P. 56(a). A fact is material if it might affect the outcome of the

case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could

resolve the issue in favor of the nonmoving party. *Id.* The movant bears the burden of

making a prima facie demonstration that there is no genuine issue of material fact. *Adler*

*v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986)).

If the moving party has demonstrated an absence of an issue of material fact, the

"nonmoving party must come forward with specific facts showing that there is a genuine

issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587

(1986) (internal quotations omitted). The mere existence of some evidence in support of

the nonmoving party, however, will not be sufficient for denial of a motion for summary

judgment; there must be enough evidence to enable a jury reasonably to find for the

nonmoving party on that issue. *See Anderson,* 477 U.S. at 249. The nonmovant must

go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).

The Court directed Defendants to compile and file a *Martinez* Report for the purpose of investigating the incident underlying this lawsuit, and "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims." (Doc. 34 at 2) (quoting *Hall*, 935 F.2d at 1109). "On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson,* 973 F.2d 1518, 1521 (10th Cir.1992). A plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and is sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.

The Court explained to the parties that the *Martinez* Report may be used in deciding whether to grant summary judgment, either upon a motion by one of the parties, or *sua sponte*. (Doc. 34 at 2). The parties were also urged to submit whatever arguments and materials they consider relevant to Plaintiff's claims in the *Martinez* Report, Response, and Reply. *Id.*

## IV.   Analysis

Plaintiff alleges that both defendants violated his constitutionally-protected rights, and brings suit under 42 U.S.C. § 1983. First, Plaintiff complains that Defendants violated his Eighth Amendment rights by acting deliberately indifferent to a substantial risk of serious harm by placing Plaintiff in general population at OCPF. Second, Plaintiff alleges that Defendants violated his Equal Protection and Due Process rights by

ignoring prison policies and procedures when they removed him from interim protective

custody. Last, Plaintiff contends that Defendant Gonzalez violated his First Amendment

rights by framing him for drug use, because Plaintiff grieved prison officials for not

placing him permanently in protective custody. Defendants filed their *Martinez* Report

and move for summary judgment on all counts, arguing that Plaintiff has failed to

demonstrate that a genuine issue of material fact exists as to any of his claims.

A.    *Law Relating to 42 U.S.C. §1983*

A civil rights action asserted pursuant to 42 U.S.C. § 1983 may be brought

against a "person who, under color of any statute, ordinance, regulation, custom, or

usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United

States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws." 42 U.S.C. § 1983 (1996). To state a claim under § 1983, an

injured person must allege a violation of a federally protected right, and must show that

the alleged deprivation was committed by an individual acting under color of state law.

*West v. Atkins*, 487 U.S. 42, 48 (1988).

B.    *Count I: Eighth Amendment Claim*

Plaintiff's first claim is that Defendants failed to provide a safe environment while

he was incarcerated, which he believes violated his Eighth Amendment right "to be free

from cruel and unusual punishment." (Doc. 1 at 3). Plaintiff contends that Defendants

knew he faced a substantial risk of serious harm by being placed in general population

at OCPF, but they refused to take reasonable measures to abate that risk in violation of

the Eighth Amendment.

The Eighth Amendment is implicated when a prison official is deliberately indifferent to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 841 (1994). A prison official violates an inmate's clearly established Eighth Amendment right if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837; *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Thus, the Eighth Amendment is violated when: (i) objectively, the deprivation alleged is "sufficiently serious"; and (ii) the official has "a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal quotations omitted).

The Eight Amendment's prohibition on cruel and unusual punishment "imposes upon prison officials a duty to protect inmates from violence at the hands of other inmates." *Belcher v. United States*, No. 06-3009, 216 Fed. Appx. 821, 823 (10th Cir. Feb. 20, 2007) (unpublished). "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (quotation and brackets omitted).

"Liability on a failure-to-protect claim arises when the plaintiff was incarcerated under conditions posing a substantial risk of serious harm (the objective component of the claim), and the defendant prison officials were deliberately indifferent to the plaintiff's safety (the subjective component of the claim)." *Belcher*, 216 Fed. Appx. at 823 (citing *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Thus, in cases alleging the failure to prevent harm, to satisfy the first component of the test the prisoner must show

that the conditions of his incarceration present an objective substantial risk of serious harm.

To satisfy the subjective component, "a prison official . . . must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This knowledge may be proved "in the usual ways, including inference from circumstantial evidence, . . . and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Defendants move for summary judgment on the grounds that Plaintiff has failed to set forth sufficient facts to satisfy either the objective or subjective component of the test.

1.    *Seriousness of Harm*

Defendants argue that they are entitled to summary judgment because Plaintiff's placement in general population at OCPF was not under conditions posing a substantial risk of serious harm, which is fatal to Plaintiff's claim. (Doc. 48 at 6). Plaintiff contends that on May 5, 2013, Mr. Sisneros pursued him to his cubicle, where a fight occurred. (Doc. 6-1 at 4 ¶ 16; Doc. 50 at 18–19). He contends that during the assault, he could have been killed. (Doc. 54 at 5 ¶ 19). Prison officials were eventually alerted that a fight occurred between Plaintiff and Mr. Sisneros. (Doc. 45 at Ex. 1 ¶ 23). Plaintiff's medical records from that day show that he suffered injuries to his face and head as the result of an assault. While Plaintiff alleges that he was being "beaten and mistreated on a regular basis," (Doc. 6-1 at 5), Plaintiff only supplies direct evidence of the one altercation

during his time at OCPF, and no other. Defendant Frawner's statement that OCPF only had knowledge of the one fight is also uncontroverted.

To satisfy the objective prong of a deliberate indifference claim, Plaintiff's injuries must be plausibly "sufficiently serious to constitute a deprivation of constitutional dimension." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). Such claims are limited "to significant, as opposed to trivial, suffering." *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005). The medical records demonstrate that as a result of the May 5 assault, Plaintiff suffered injuries to his face and head that required medical attention. *See Aranda v. McCormac*, Civil Action No. 08-cv-0487-WYD-KMT, 2009 WL 1765693, at *4 (D.Colo. June 18, 2009) (unpublished) (holding that injuries to the face and head requiring medical attention as a result of an inmate-on-inmate fight satisfied the objective component). The Court finds that Plaintiff has demonstrated "significant, as opposed to trivial, suffering" as a result of the May 5 altercation, and therefore the "substantial harm" requirement is satisfied.

However, Plaintiff has failed to provide any evidence or make any specific allegations concerning other injuries that he suffered during his time at OCPF, and therefore the Court's subjective inquiry is limited in scope to the May 5 altercation only.

### 2.    Knowledge of Risk

Defendants also claim that there is no evidence they had subjective knowledge of a substantial risk of harm to Plaintiff, and disregarded that risk. Defendants contend that at no time did they nor OCPF believe that Plaintiff was subject to harm in the general population. (Doc. 45 at Ex. 1 ¶ 13). They contend that his request for placement

in protective custody was motivated by a desire to avoid the dorm-like setting of the general population. (*Id.*).

To prevail on the subjective component, a plaintiff must show "that the defendants knew he faced a substantial risk of harm and disregarded that risk . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Martinez v. Beggs*, 563 F.3d 1082, 1089 (10th Cir. 2009) (internal citations omitted). The subjective standard requires a culpable state of mind on the part of the official. *See Gonzalez v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005). Mere negligence by prison officials or medical staff will not suffice to meet the subjective prong of deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). "It requires a level of recklessness tantamount to criminal recklessness, inclusive of a subjective mens rea." *Belcher v. Loftness*, No. 03-3261-JWL, 2005 WL 2323222, at *5 (D.Colo. Sept. 22, 2005) (unpublished) (citing *Farmer*, 511 U.S. at 836, 839–40).

Plaintiff contends that through his classification appeals, letters, and grievances, Defendant Gonzalez and Defendant Frawner were subjectively aware that he was in danger of being harmed by another inmate while at OCPF. (Doc. 54 at 5 ¶ 18). The Court will therefore consider those documents.

Plaintiff attached a copy of his first request for protective custody, or in the alternative to be transferred back to LCCF, to the Complaint. (Doc. 1 at Ex. A). It is dated April 14, 2013, and addressed to Mr. Booker. Plaintiff states that he "can't live like

this" for the remainder of his sentence because OCPF was not designed for long-term commitments to prison. (*Id.*). He described his living quarters as follows:

> It's a dorm with rows and rows of bunks. We don't have any place to put our stuff and the floors are cluttered with our belongings. I'm pretty sure . . . that's some sort of safety haz[]ard. Not to mention the fact that these bunks have no ladders to climb up and down from. Nor will they give us any chairs.

(*Id.*). He claims that the "main reason" he does not belong in general population at OCPF is because he is being forced to participate in a mandatory sex offender rehabilitation program in error. (*Id.*). He further complains that he is being housed in OCPF in violation of prison policy, because there are inmates with shorter sentences being placed with inmates serving life sentences, and inmates from the general population being placed with those typically classified as protective custody inmates. (*Id.*). He writes that it "poses a HUGE threat to the safety and security of the Institution." (*Id.*) (emphasis in original).

Plaintiff attached a copy of his "enemy list" with the letter addressed to Mr. Booker, explaining that he had previously provided that list of names to other OCPF officials but it had been ignored.[5] (Doc. 1 at Ex. A). Mr. Sisneros is not included on the enemy list.[6] (Doc. 1 at Ex. A at 4). On April 17, 2014, Plaintiff submitted the same list of names to Defendant Gonzalez. (Doc. 1 at Ex. B; Doc. 6-1 at 4 ¶ 15). Defendant Gonzalez spoke to Plaintiff the next day about his list of enemies, and that Plaintiff was subsequently placed in interim protective custody. (Doc. 45 at Ex. 2 ¶¶ 11–12).

---

[5] In the Complaint, Plaintiff alleges that in the April 14 letter he also requested he be separated from the individuals on his enemy list for his own protection. (Doc. 6-1 at 4 ¶ 14). However, a review of the April 14 letter does not indicate that Plaintiff ever requested he be separated from his enemies for the reason that he needs protection from them.
[6] The Court notes that "Richard Sisneros" was on Plaintiff's enemy list. There is no evidence or allegation that David Sisneros, Plaintiff's alleged attacker, is also known by that name or was on the enemy list.

Defendants contend that based on the information they had prior to the fight between Plaintiff and Mr. Sisneros, they did not believe Plaintiff to be in serious harm in the OCPF general population. (Doc. 48 at 6). Defendant Gonzalez states that he was only aware of Plaintiff's enemy list and request to be placed in protective custody, which he forwarded to STIU for further investigation pursuant to OCPF's general practice and procedure. (Doc. 45 at Ex. 2 ¶¶ 11–14). He placed Plaintiff in interim protective custody after he received the enemy list, and did not make any further decisions regarding his placement. (*Id.*)

Defendant Frawner states that he believed Plaintiff's request for protective custody to be merely an attempt to be transferred out of the OCPF general population dorm setting and into a single cell. He states that many inmates were "seeking creative ways" to be transferred out of the dormitory-style setting of OCPF's general population. (Doc. 45 at Ex. 1 ¶¶ 11–13).

Plaintiff responds that he has been a registered sex offender since 2000, and since that time has also been a protective custody inmate because as a registered sex offender, he is generally "a target for abuse from prisoners in general population." (Doc. 50 at 5). Plaintiff describes the environment in the general population unit at OCPF as "an accident waiting to happen." (Doc. 50 at 6; Doc. 54 at 4 ¶ 12). He maintains that it is a well-known fact that general population inmates do not get along with protective custody inmates, and have been known to threaten, assault, and attack the protective custody inmates. (Doc. 54 at 4). He states that there was tension between the inmates in his housing unit, and that "a lot of fights" broke out among the inmates that went

unnoticed and unreported. (Doc. 50 at 6–7). He alleges that the fighting mostly took place in the shower and was undetected. (Doc. 50 at 7).

Plaintiff claims that once he was taken out of interim protective custody and placed back in general custody at OCPF, he "had a target on [his] back because [he] had tried to P.C." (Doc. 50 at 8). He states that it was known amongst fellow inmates he had requested protective custody, which opened the door to abuse at the hands of other inmates. (Doc. 50 at 8–9).

The Court will first address the direct evidence presented of the defendants' subjective knowledge of a risk of harm to Plaintiff. Plaintiff's initial request to be removed from general population focuses on the quality of the living quarters themselves and NMCD's alleged error in placing him in a mandatory rehabilitation program for registered sex offenders. Plaintiff did not mention acts of past violence in his grievances, or identify Mr. Sisneros as an enemy. Plaintiff does not express his fear of harm at the hands of other inmates. *Cf. Howard v. Waide*, 534 F.3d 1227, 1238 (10th Cir. 2008) (holding that the direct evidence of extensive past violence and threats by a prison gang against the plaintiff demonstrated that prison officials knew of plaintiff's past custody issues involving the gang, and the possibility of future violence against him by that gang). While an affected inmate need not provide written notice of a threat to trigger an official's duties under the Eighth Amendment, the facts presented in the Complaint do not reveal that Plaintiff provided notice of his fears of serious harm in his classification appeals, letters, and grievances, or during any conversation with Defendants. *Id.* at 1237.

Nor has Plaintiff presented circumstantial evidence that he was vulnerable to assault in the general population unit at OCPF. Plaintiff alleges that he had only one contact with Defendant Martinez about his request to be placed in protective custody, and does not allege that he told Defendant Martinez he had been threatened. He merely claims that he made a voluntary request to be placed in protective custody and submitted a list of nine enemies. There are no facts that indicate Defendant Martinez had knowledge of a specific threat to Plaintiff's safety, and therefore no facts establishing that he was deliberately indifferent to Plaintiff's safety.

Further, Plaintiff did not report any threats to his safety or changes in his circumstances once he returned to general population. No facts establish that Defendants had reason to believe that Plaintiff was going to be attacked by Mr. Sisneros and ignored the situation.

The Court must also consider the "background information" that might inform prison officials of "obvious risks" to a prisoner. *See Howard*, 534 F.3d at 1238. "It is against this circumstantial backdrop" the Court must consider the direct evidence of what Plaintiff told prison officials. *See id.* Plaintiff's allegation that Defendants were aware of a generalized risk of harm resulting from his status as a registered sex offender, by itself, does not constitute knowledge of a specific threat. *See, e.g., Belcher*, 2005 WL 2323222 at *6 (finding that official's knowledge that law enforcement informants are more likely to be in danger in a general prison population did not constitute knowledge of a specific threat, and therefore the official could not be held liable for "culpable indifference" to plaintiff's safety); *see also Brigden v. State ex. rel. Okla. Dept. of Corr.*, No. 96-3339, 1997 WL 687674, at *7 (10th Cir. Oct. 29, 1997)

(unpublished) (holding general knowledge that sex offenders may be in danger in a general prison population failed to establish deliberate indifference absent knowledge of a specific threat to prisoner's safety). While prison officials may be aware of a substantial risk of harm even where no outright threat has occurred, Plaintiff has presented no circumstantial evidence that Defendants or other OCPF prison officials were even made aware of a general threat of violence to Plaintiff.

In sum, the Court has considered all of the evidence in the record, and finds that no reasonable jury could conclude from the facts that Plaintiff has presented that either defendant had the requisite culpable state of mind necessary for Plaintiff to succeed on his Eighth Amendment claim. Defendants have demonstrated that there is no genuine issue of material fact as to the subjective component of his Eighth Amendment claim, and therefore the Court recommends that summary judgment be granted in favor of Defendants on this claim.

C.      _Counts II and III: Due Process and Equal Protection_

Plaintiff further alleges that Defendants violated his Equal Protection and Due Process rights by removing him from interim protective custody at OCPF, in violation of NMCD policies and procedures (CD-143000, 150100, and 150600). (Doc. 1 at 4; Doc. 6-1 at 6–7).

Defendants move for dismissal of the Fourteenth Amendment claim on the basis that Plaintiff has no due process right to a particular inmate classification while in prison. _See Muniz v. Moore_, No. 09-2199, 375 Fed. Appx. 841, 844 (10th Cir. Mar. 31, 2010) (unpublished). "The Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property." _See Templeman v. Gunter_, 16 F.3d 367,

16

369 (10th Cir.1994). A modification or change of an inmate's prison classification does not ordinarily deprive him of liberty, because he is not entitled to a particular degree of liberty in prison. *Id.*

The Court acknowledges that a due process liberty interest may be at stake when a prisoner's reclassification imposes an "atypical and significant hardship." *Wilkinson v. Austin,* 545 U.S. 209, 222–23 (2005) (quotations omitted) (holding that indefinite solitary confinement reviewed annually and rendering the prisoner ineligible for parole to be "atypical and significant hardship"). However, Plaintiff does not allege such extreme conditions are present in this case.

Plaintiff contends only that he was removed from protective custody when he was transferred to OCPF, and complains generally about the threat he felt as a registered sex offender placed in general population. The Due Process Clause does not protect a prisoner against transfer from one institution to another within the state prison system. *Meachum v. Fano,* 427 U.S. 215, 225 (1976).

However, explicit mandatory language in state statutes and regulations can create liberty interests if they substantively limit an official's discretion. *See Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 463 (1989); *Hewitt v. Helms,* 459 U.S. 460, 469–71 (1983). Defendants submitted the New Mexico Corrections Department ("NMCD") policies identified by Plaintiff with the *Martinez* Report, and the Court has reviewed those policies. CD 143000 provides guidelines officials should use to classify NMCD inmates to Prison Security Levels V and VI. (Doc. 46-47). In accordance with CD 143001, an inmate may be temporarily placed in the segregation unit if the inmate meets Level VI placement requirements. (Doc. 46-48 at 18). An inmate may be

voluntarily placed in Level VI Inmate Protection if he states his belief that housing in general population places him in jeopardy of serious bodily harm and requests placement in Level VI. (*Id.*). A voluntary request must be in writing and signed, and placement is on an interim basis only; the final determination is made by a classification committee. (*Id.*). An inmate requesting voluntary placement in inmate protection should provide a list of enemies and details of incidents or information resulting in his request. (*Id.*). The other NMCD policies identified by Plaintiff—CD 150100 and CD 150600— prescribe the appropriate response to inmate abuse and sexual and other misconduct reporting. (Doc. 46-48 at 1–15; Doc. 46-49 at 15–19).

Plaintiff has not demonstrated that CD 143000, CD 150100, or CD 150600 entitle him or any other inmate to remain permanently in protective custody at OCPF at will, nor does he describe how Defendants violated these policies in contravention of due process. The Court finds that none of these policies grant Plaintiff a liberty interest in his prison classification, and recommends that the claim be dismissed.

Plaintiff also claims he was not treated the same as similarly situated inmates because Defendants ignored their own policies concerning inmate placement in protective custody. "To sustain a claim under the Equal Protection Clause, a plaintiff must provide evidence that he was treated differently from others who are similarly situated to him, and that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1179 (10th Cir. 2003). Plaintiff generally alleges that Defendants applied CD 143000, CD 150100, or CD 150600 differently to him than to other inmates. However, Plaintiff does not allege that the acts forming the basis for his claim were motivated by a

discriminatory purpose, nor does he provide any facts demonstrating disparate treatment by Defendants. *KT & G Corp. v. Att'y Gen. of Okla.*, 535 F.3d 1114, 1137 (10th Cir. 2008). Plaintiff offers only conclusory and deficient allegations, unsupported by any evidence, and therefore the Court recommends that his Equal Protection claim also be dismissed with prejudice on summary judgment.

    D.    <u>Count IV: First Amendment</u>

    Last, Defendant Gonzalez moves for summary judgment on Plaintiff's First Amendment claim of unlawful retaliation. Plaintiff alleges that Defendant Gonzalez retaliated against him for filing a grievance against Defendant Gonzalez. Plaintiff claims that on June 6, 2013, he grieved Defendants for "deliberately placing him in harm[']s way and for not leaving him in P.C." (Doc. 6-1 at 4 ¶ 18). Plaintiff states that Defendant Gonzalez retaliated against him for using the inmate grievance system by withholding his mail and canteen privileges and framing him for illegal drug use. (Doc. 6-1 at 7). Defendant Gonzalez denies Plaintiff's allegations, and moves for summary judgment on the basis that Plaintiff has failed to allege specific facts demonstrating that Defendant retaliated against Plaintiff for filing a grievance.

    An improper motive for disciplining a prisoner may give rise to a cause of action under § 1983. *See Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). But not "every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." *Dawes v. Walker,* 239 F.3d 489, 492–93 (2d Cir. 2001). "[T]o establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the

protected conduct and the adverse action." *Baldauf v. Hyatt,* No. 2008 WL 280839, at *7 (D.Colo. Jan. 31, 2008) (unpublished) (quoting *Scott v. Churchill,* 377 F.3d 565, 569 (6th Cir.2004)); *see also Davis v. Goord*, 320 F.3d. 346, 352 (2d. Cir. 2003). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Peterson v. Shanks,* 149 F.3d 1140, 1144 (quotation omitted). A plaintiff must show that but for the retaliatory motive, the incidents to which he refers would not have taken place. *Id.*

Plaintiff's conduct in filing a grievance against Defendant Gonzalez is protected conduct. *See Davis*, 320 F.3d at 352–53; *Maschner,* 899 F.2d at 947 (holding that a prison official may not retaliate against or harass an inmate because he exercises his right of legal access); *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1302 (D.Colo. 2009) ("Because a prisoner must first file a grievance in order to ultimately gain access to courts to state a claim for relief . . ., punishing him for actually filing a grievance would state a claim for both denial of access to the courts and violation of the First Amendment."). Thus, Plaintiff satisfies the first prong of a First Amendment retaliation claim.

Defendant Gonzalez does not move for summary judgment as to the second prong of the test. Rather, Defendant contends that he is entitled to summary judgment because he did not frame Plaintiff for drug use, and any adverse action against Plaintiff was the result of Plaintiff's violation of the OCPF prohibition on dangerous drug use, and not due to a retaliatory motive.

Defendant Gonzalez argues that Plaintiff has failed to demonstrate a causal connection between the grievance that he filed and the alleged adverse actions taken

by Defendants' conduct. Plaintiff alleges that on the morning of July 2, 2013, he and an inmate named Alejandro Molina were randomly tested for drug use. (Doc. 6-1 at 5 ¶ 21; Doc. 44). Plaintiff maintains that since he no longer uses drugs, that he believed that the test would come back negative for drugs. (Doc. 6-1 at 5 ¶ 21). Mr. Molina allegedly admitted to Plaintiff to using BUP. (*Id.*).  Plaintiff's drug test came out positive for BUP, and which he attributes to Defendant Gonzalez framing him by testing Mr. Molina's urine instead of his own. (*Id.*). As direct proof, Plaintiff alleges that he and Mr. Molina share identical prohibited drug use misconduct reports from that day, and that no one but Defendant Gonzalez "ever witnessed [his] alleged dirty [urinalysis]." (*Id.*).

Plaintiff also alleges that later that same day, he spoke with an Institutional Grievance Officer about a grievance he filed on June 6 requesting placement in protective custody.[7] (Doc. 6-1 at 5 ¶ 21). Plaintiff contends that he told the officer that he still wanted to be placed into protective custody, and that a few minutes later he was confronted by Defendant Gonzalez asking why he had complained about Defendant Gonzalez. (*Id.*). Plaintiff also claims that he never received a response to his June 6 grievance. (*Id.*).

Defendant Gonzalez maintains that the documents filed in connection with the drug test, in addition to his own uncontroverted testimony, prove that Plaintiff was disciplined for illegal drug use and not based on a retaliatory motive. (Doc. 48 at 8). In his Response, Plaintiff makes bare allegations that the disciplinary hearing officer ignored exculpatory evidence of urine tampering, and that Defendant Frawner simply

---

[7] Defendants submitted a copy of Plaintiff's inmate grievance dated June 6, 2013 with the *Martinez* Report. (Doc. 46-36 at 20). In that grievance, Plaintiff recounted the fight that occurred on May 5, and stated that he was "griev[ing] the security and administration for <u>not</u> leaving [him] in P.C. and for putting [him] in harm[']s way." (*Id.*)

rubber-stamped the disciplinary hearing officer's decision. (Doc. 50 at 14–18). Plaintiff challenges the chain of custody of the urine sample cup, alleges that Defendant Gonzalez was not trained to test urine for drugs, and that the test cup was not properly sealed. (*Id.*) He claims that "it's pretty obvious that Defendant Gonzalez framed [him]" using Mr. Molina's dirty urine. (*Id.* at 17). He maintains that he is challenging the finding of drug use in state district court. (*Id.* at 18).

"[I]t is imperative that [a] plaintiff's pleading be factual and not conclusory." *Frazier v. Dubois,* 922 F.2d 560, 562 n.1 (10th Cir. 1990). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Id.*; *see also Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir.1999). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Id.*

Bare allegations of retaliation will not avoid summary judgment, because a plaintiff must set forth specific facts demonstrating retaliation occurred due to the prisoner's exercise of his constitutional rights. *Schlicher v. Martin*, No. 95-3118, 76 F.3d 393, 393 (10th Cir. Feb. 2, 1996) (unpublished) (citing *Anderson*, 477 U.S. at 256). In some cases, circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. *See Maschner,* 899 F.2d at 949 (holding that prisoner's circumstantial evidence of the suspicious timing of his discipline, the coincidental transfers of his witnesses, and an alleged pattern by defendants of blocking his legal access, was sufficient to raise a genuine issue of improper motive).

Here, Plaintiff does not provide a chronology of events suggesting suspicious timing of his drug testing, or any other circumstantial evidence from which the Court could plausibly conclude that he was retaliated against for filing grievances. Indeed, Plaintiff offers no more than his bare assertion that Defendant Gonzalez was motivated to retaliate against him for utilizing the inmate grievance process. Here, the Court finds that it is notable that the June 6 grievance does not identify Defendant Gonzalez by name, and was made against OCPF security and administration generally. Thus there is no evidence in the record to demonstrate any motive that Defendant Gonzalez would have to retaliate against Plaintiff for utilizing the inmate grievance process.

Further, Plaintiff offers only bare, unsupported assertions that the urinalysis would have tested negative for drugs but for Defendant Gonzalez tampering with his urine sample. Plaintiff states that he "do[esn't] use drugs anymore and believed his U.A. to be 'clean.'" (Doc. 6-1 at 5). Thus, Plaintiff implies that he was a narcotic drug user at some time prior to the drug test. Further, the record is replete with his requests to NMCD medical personnel throughout June and July 2013 for stronger narcotic pain medicine. (Doc. 46-29 at 5–9). Based on that evidence, it is not unreasonable that Plaintiff's urinalysis would come out positive for drugs, and Plaintiff provides only his personal belief that his drug test should have come back with a negative result.

Plaintiff moves the court to "expand the record" and consider additional evidence that he attaches to his motion in its analysis. (Doc. 44). Specifically, Plaintiff attached his misconduct report dated July 2, 2013; a photograph of his urinalysis test cup; a misconduct report of Mr. Molina dated July 2, 2013, and a photograph of the urinalysis test cup that Mr. Molina purportedly gave to him; a letter written by Plaintiff to Defendant

Frawner dated October 3, 2013; and an example of how photographs of urine samples are purportedly supposed to be labeled pursuant to NMCD policy. (Doc. 44-1). Plaintiff contends that this evidence proves that Defendant Gonzalez framed him for illicit drug use, and argues that the misconduct reports and photographs of the inmates' urine cups are identical. Defendant objects to the inclusion of this evidence into the record on the basis that it is hearsay, unauthenticated, or moot because such evidence was submitted into the record as part of the *Martinez* Report. The Court will sustain Defendant's objections on those bases.

Even if the evidence were considered by the Court, it does not provide the requisite direct or circumstantial evidence of retaliation to demonstrate a genuine issue of material fact exists as to Count IV. Plaintiff's misconduct report states that Plaintiff was randomly drug tested on July 2, 2013 at 1:30 p.m., while the misconduct report of Mr. Molina states that he was drug tested later that day at 3:30 p.m. (Doc. 44-1 at 1, 3). This chronology of events directly contradicts the version alleged in Plaintiff's verified Complaint. The copies of the photographs of the urine cups provided by Plaintiff do not demonstrate any malfeasance on the part of Defendant Gonzalez. These proffered documents are not probative, and the Court does not find that they raise any disputed issue of material fact that Defendant Gonzalez acted with retaliatory motive.

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323–24. If the evidence set forth by the plaintiff is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. Plaintiff's bare, conclusory assertions do not provide sufficient detail of a causal connection

between his filing of grievances and Defendant Gonzalez's alleged adverse actions. Plaintiff has provided no more than "his personal belief that he is the victim of retaliation." *Jones,* 188 F.3d at 325. Therefore, the Court finds Count IV to be unsupported by any specific facts, and recommends that judgment be granted in Defendant Gonzalez's favor and Count IV be dismissed with prejudice.

## V.    Motion to Amend is Improper

Plaintiff also requests leave to amend the Complaint and add three new defendants to this lawsuit. (Doc. 50 at 20–21). He explains that he intends to bring Eighth Amendment, Due Process, and Equal Protection claims against them. This District's local rules require that "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1. Plaintiff's motion does not include enough information to support amendment, nor has he attached a proposed amended complaint in accordance with the local rules. Although Plaintiff is proceeding pro se, he must "follow the same rules of procedure that govern other litigants." *Nielsen*, 17 F.3d at 1277. Thus, the Court finds that Plaintiff's motion is not well-taken and the Court recommends that the Motion be denied.

## VI.   Conclusion

For the reasons stated above, the Court recommends that:

a) *Defendants' Motion for Summary Judgment and Supporting Memorandum*, (Doc. 48), be **GRANTED** in favor of all Defendants;
b) Plaintiff's claims against Defendant James Frawner be **DISMISSED WITH PREJUDICE**;
c) Plaintiff's claims against Defendant Michael Gonzalez be **DISMISSED WITH PREJUDICE**;
d) Plaintiff's Motion to Amend be **DENIED**; and
e) Plaintiff's *Motion to Expand the Record*, (Doc. 44), be **DENIED.**

25

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE